## MORGAN v. HARDY et al.

### No. 2776.

Court of Civil Appeals of Texas. El Paso. Jan. 19, 1933.

Rehearing Denied Feb. 16, 1933.

J. Louis Shook and Smithdeal, Shook, Spence & Bowyer, all of Dallas, for appellant.

J. E. Gilbert and Bailey, Nickels & Bailey, all of Dallas, for appellees.

PELPHREY, Chief Justice.

This suit was instituted by appellees, as plaintiffs, against appellant, as defendant, in the 101st district court of Dallas county, Tex., on July 21, 1928.

While the correctness of some of the findings of fact made by the trial court are questioned, yet we think they present a reason-ably fair statement of the facts and we shall quote them here and later discuss those portions attacked. They are:

"1. That defendant, J. Doug Morgan, on February 12th, 1925, contracted with Hardy Light Company, a corporation, for the purchase and shipment to defendant at Jacksonville, Texas, from the factory of Universal Motor Company of Oshkosh, Wisconsin, the electric plants described in the pleadings to be delivered at destination not later than March 5th, 1925, and for the price and sum of $3,125.00, of which $1,000.00 was paid at the time the order was given."

"2. That shipment was made of the plants and delivered and accepted."

"3. That on February 24th, 1925, defendant executed and delivered four promissory notes payable to Hardy Light Company, a corporation, each in the sum of $200.00, with interest at 10% per annum fram maturity, and maturing respectively in 30, 60, 90 and 120 days after date, and providing for 10% attorney's fees, on which notes defendant's address is given at Corsicana, Texas.

"That the note first maturing was paid at maturity, and that on May 4th, 1925, $98.00, and May 15th, 1925, $50.00 was paid and credited on the second maturing note and nothing more was paid on said notes."

"4. That on or about the date of the execution of said four notes and before maturity of either of them, the same were endorsed in blank by the payee and sold to W. T. Hardy, one of the plaintiffs herein for $750.00, and the said sum so paid by him was paid by Hardy Light Company to the plaintiff, Universal Motor Company. W. T. Hardy bought said notes and paid therefor in good faith and without knowledge or notice of any defects therein or defense thereto, and he was not in anywise connected with the Hardy Light Company.

"That said W. T. Hardy is still the owner and holder of the unpaid notes and is entitled to recover the amount due thereon at this date, which with attorney's fees, aggregates $833.10."

"5. That on February 28th, 1925, defendant executed and delivered to the Hardy Light Company, a corporation, twenty-eight (28) trade acceptances of that date, maturing respectively one on Tuesday of each week, all having been accepted by defendant on March 3rd, 1925, each being in the sum of $50.00, except that maturing December 29th, 1925, which is for $46.75." (Here follows a description of the trade acceptances.)

"6. That the 15 acceptances first maturing, Nos. 750 to 764, inclusive, and $40.65 of No. 765, of said acceptances aggregating $790.65, belonged to plaintiff, Universal Motor Company, a corporation, and $9.35 of said No.

765, and the remainder of said trade acceptances aggregating $606.10 principal, with interest at 10% from their respective due dates belong to J. B. Hardy, one of the plaintiffs, and the amount due thereon, with interest and attorneys' fee aggregates $1085.35, and all were endorsed in blank and delivered to him before maturity."

"7. That on the 3rd of March, 1925, the defendant, J. Doug Morgan, executed a chattel mortgage of that date in favor of Hardy Light Company, Inc., to secure the sum of $2,196.75 due said Hardy Light Company, Inc., evidenced by the four notes and tweney-eight trade acceptances above described, one due on Tuesday of each week commencing June 30th, 1925, with 10% from maturity, to the total amount of $1396.75, and which mortgage was upon two Universal 12½ K. W. Electric Lighting Plants wired in parallel, described as follows: (here follows description) which property was to remain in Texas, except from time to time might be removed upon the written consent of the Hardy Light Company, Inc."

"Said mortgage contains the usual provisions as to foreclosure and taking possession by mortgagee, or its assigns, for the satisfaction of said debt, with 10% attorney's fees if placed in the hands of attorney, or collected through probate court."

"8. That at some date not disclosed defendant, Morgan, without the written consent of Hardy Light Company, Inc., or any of the plaintiffs, carried said mortgaged plants out of the state of Texas and into the state of Iowa, and to Cedar Rapids therein, and then stored the same in his own name, where they remained until some time not stated, but between the time this suit was filed and the trial thereof, when by agreement between defendant Morgan and plaintiff Universal Motor Company, a corporation, said Morgan surrendered and delivered possession of said two plants to said Universal Motor Company, without the knowledge or consent of said W. T. or J. V. Hardy, the holders and owners of said notes and the trade acceptances as above found, and plaintiff Universal Motor Company, a corporation, accepted possession of said plants and relinquished all claim against said Morgan."

"9. That the plaintiffs used and exercised due diligence to procure service of citation upon defendant Morgan from the beginning of this suit, and until October 1931, when service was procured by one of the plaintiffs taking citation in person to the sheriff of Delta county, Texas, and there pointing out the defendant."

"That defendant was a transient person, and had during the pendency of this suit, and has his domicile and place of residence in Savanna, in Carroll county, state of Illinois."

After being served in October, 1931, appellant answered by general demurrer, general denial, a plea of the four-year statute of limitations, a plea of settlement, and prayed for a judgment over against Universal Motor Company in case of judgment against him in favor of the Hardys.

The trial court rendered judgment in favor of W. T. Hardy and against appellant in the sum of $833.10; in favor of J. V. Hardy against appellant for $1,085.35; that Universal Motor Company take nothing; that appellant take nothing on his cross-action against Universal Motor Company; and that the chattel mortgage be foreclosed for the satisfaction of the amounts due W. T. and J. V. Hardy.

This appeal has been perfected from said judgment.

### Opinion.

In his ten propositions appellant attacks the correctness of the judgment on the following grounds: (1) That the finding of the court that appellees exercised due diligence to procure service of citation upon appellant was not a finding of fact but merely a conclusion of the court and therefore insufficient to support judgment based thereon; (2) that the evidence was wholly insufficient to support such finding; (3) that the facts shown were insufficient, as a matter of law, to amount to diligence such as would toll the statute; (4) that the court having found that appellant was a nonresident, transient person, no diligence was shown in the absence of a showing that appellant was cited by publication; (5) that the finding of the court that appellant was a transient person and had his residence in Illinois was without evidence to support it; and (6) that the court was without power to foreclose a lien on property which was without the state at the time suit was filed, especially where the party in possession was not an adverse party to those asserting the lien.

The attorneys of the parties entered into the following agreement at the trial: "It is agreed by and between the attorneys representing the respective parties hereto that the instruments sued on were correctly described in the findings of facts, and that the judgment in favor of J. V. Hardy and W. T. Hardy is correct, unless the right to recover thereon is defeated by plea of limitation of defendant J. Doug Morgan."

■ Appellant's assignment questioning the judgment foreclosing the chattel mortgage raises a question as to which he cannot complain. His pleadings show that he surrendered the property to the Universal Motor Company, therefore, a judgment of foreclosure against said property could not injuriously affect him. 3 Tex. Jur. § 728, p. 1026.

Our statute of limitations (Rev. St. 1925, art. 5527) as to actions such as we have under consideration reads:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

The filing of a suit prior to the completion of the limitation period automatically interrupts the course of limitation, provided the suit is filed with the intention of prompt issuance of citation and the exercise of diligence to procure service thereof. The mere filing of the suit is not sufficient. Due diligence must be exercised to have process issued and served, otherwise the running of the statute will not be tolled. Austin, Banking Com'r v. Proctor (Tex. Civ. App.) 291 S. W. 702, and authorities there cited.

While it is true that the holdings in the above cases were not based upon this particular statute, yet, what is there said applies with equal force to the statute here under consideration. Therefore, in the present case, if appellees did not use due diligence in having process issued and served upon appellant, he was entitled to have his defense of limitations sustained.

The testimony of J. V. Hardy shows that he initiated the negotiations for the sale of the lighting plants at Corsicana, Tex., where appellant was getting ready to conduct this show, that he had heard several times that appellee had headquarters at Jacksonville, Tex.; that he had heard within the year or two before he was testifying that appellant had turned the plants back to the Universal Motor Company; that the plants had been in a warehouse in Cedar Rapids, Iowa, for a number of years and that he had tried to get hold of them; that he went several times to Jacksonville, Nacogdoches, and Lufkin and once to Texarkana for a week, once to Brownwood where appellant's show was being advertised in an effort to locate appellant in connection with having process served on him; that he never saw him except in Jacksonville in 1925 or 1926; that he heard of him and his shows but could never locate him after that; that he sent a Mr. Mixon to Jacksonville, Mr. Strong to Livingston and probably to Trinity, also to Atlanta where appellant's show was; that in March, 1928, he spent three days in Texarkana and did not locate him; that he had a citation with him at each place; that he had some correspondence with appellant from Cedar Rapids, the first or second year after the note and mortgage were executed; that two of the trips were made by him specially to locate appellant and once or twice on other business and once he went hunting.

The witness Stephens testified that he had had instructions from J. V. Hardy to look out for and try to ascertain appellant's whereabouts; that he went to Snyder and Sweetwater with a citation that Judge Gilbert had sent to be served at Sweetwater; that he spent two days with the sheriff and was unable to locate appellant with his show there; that he then went to Pittsburgh and Sulphur Springs and did not find him at either of those places; that he made his first trip in the latter part of the summer of 1928; and went to Pittsburgh and Sulphur Springs later in the fall; that he made no other trips.

W. T. Hardy testified that the only effort he had made was to locate appellant's shows which he finally did in the fall of 1931 at Cooper; that then was when service was had.

Judge Gilbert, attorney for appellees, testified that the suit was filed on July 21, 1928; that on July 23d citation was issued and sent to the sheriff of Nacogdoches county but it seems never to have been returned; that another citation was issued on September 10th; and service was had January, 1932; that he wrote a letter to Mr. Hardy on December 22, 1930, and another on January 6, 1931, to see if he could get any trace of appellant's shows; another on the 9th; wrote a letter on December 13, 1929; that he had a letter from the sheriff of Nacogdoches county stating that appellant had a farm near Jacksonville, Cherokee county; that he did not remember if any citation was issued to Cherokee county but that they sent a man down there to locate him and he was not there; that in the citation issued September 10th, the name of the county was left blank so appellant could be served wherever found; that all the citations issued in the case were: July 21, 1928, to Nacogdoches county, one on September 10, 1928, and the one that was served.

Appellant testified that he had lived at Jacksonville, Cherokee county, Tex., for about thirteen years; that he was engaged in the show business; that he stored his shows during the winter months at Jacksonville; that he stored the lighting plants in Cedar Rapids, Iowa; that upon agreement that he would not be held liable for anything he turned them over to the Universal Motor Company; that he had not been out of the state of Texas in the spring or fall for twelve or fifteen years; that during the winter while his show was stored at Jacksonville he was out a good deal of the time making preparations for the next season; that during the entire year he was not in any one place very long but was in east Texas about eight months out of each year; that he advertised in what is called the Billboard, a show paper, the routing of his show each year; that he opened and closed the season each year in Jacksonville; that such fact was advertised.

On cross-examination he testified to executing a deed of trust in 1927, in which there

appeared this recital: "That I, J. Doug Morgan of the county of Carroll, state of Illinois, but now temporarily of the state of Texas, county of Cherokee"; that the recital was true; that on March 30, 1931, he and his wife executed an instrument containing this recital: "We have never maintained a home in Texas and we have no homestead rights in the above described property"; that the statement was true; that he executed a deed of trust on March 14, 1925, containing the following statement: "That we, J. Doug Morgan and wife, of Savanna, Carroll county, Illinois, but now temporarily of Jacksonville * * *"; that the statement was correct; that he never lived in Carroll county; that his wife had property and her home that her mother left her there; that in order to get a loan in Texas they made this statement in the deed of trust: "The above described tract of land does not now and has never constituted any part of our homestead, being in the city of Savanna, county of Carroll, state of Illinois"; that they had been living and had their stuff stored at Jacksonville and that it had been the only home they had maintained; that they had never maintained a home in Savanna.

It will be seen from the above that appellant by his own admission was not in one place very long at a time, therefore, that getting personal service on him was not a simple matter.

■ The trial court was authorized to disregard any part or all of appellant's testimony, and, in deciding the question of diligence, look only to the evidence of appellees in connection with the facts and circumstances.

■■ The question as to whether appellees had been diligent was certainly one of fact and the court's finding thereon was not an opinion or conclusion as asserted by appellant.

The contention that by virtue of the court's finding that appellant was a nonresident diligence could not be shown without a showing that he had been cited by publication cannot be sustained. The record shows that appellant spent a considerable part of his time traveling over Texas, and appellees had a right to have personal service on him if such could be secured by the use of due diligence.

There is nothing in the law which prohibits personal service being had on a nonresident, if he can be located in the state.

Furthermore, it is not shown that appellees knew appellant was a nonresident during most of the time when they were attempting to get personal service on him.

After a careful study of the record we cannot say that the record here shows, as a matter of law, that due diligence was not exercised by appellees to have process served on appellant. Therefore, it was a question of fact which the trial court has found against appellant, and this court is without authority to disturb it.

The judgment of the trial court is accordingly affirmed.