Reversed and Remanded and Memorandum Opinion filed September 28, 2004









Reversed and Remanded and Memorandum Opinion filed
September 28, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00583-CV

____________

 

ANDRE
FORREST, Appellant

 

V.

 

STEPHEN
HOUCK,
Appellee

___________________________________________________________

 

On Appeal from the County Court at Law Number 3

Harris County, Texas

Trial Court Cause No. 774289

___________________________________________________________

 

M E M O R A N D U M   O P I N I O N

In this appeal we must determine
whether the trial court erred in granting appellee Stephen Houck=s motion
for summary judgment based on the appellant Andre Forrest=s alleged
lack of diligence in serving Houck after the limitations deadline.  Because Forrest has presented some evidence
explaining the delay in obtaining service and because Houck has not shown that
Forrest=s
explanations are insufficient as a matter of law, we reverse and remand.








I.  Factual and Procedural Background

The parties agree about the following facts relating to Forrest=s fraud
claim:

!         The statute of limitations for Forrest=s fraud claim against Houck
began running on December 15, 1998.

!         Forrest filed his original petition asserting this fraud
claim against Houck on June 14, 2002.

!         The statute-of-limitations deadline for this fraud claim was
December 15, 2002.

!         Houck was not served until December 27,
2002.  

Houck filed a motion for summary judgment in which he proved that,
although Forrest filed suit before the statute of limitations expired, Houck
was not served until twelve days after expiration of the limitations
period.  The only ground asserted in
Houck=s motion
was statute of limitations based on Forrest=s alleged
failure to exercise due diligence in serving Houck.

In his response in opposition to Houck=s motion
for summary judgment, Forrest provided the affidavit of his attorney, E.D.
McKinney, Jr., in which McKinney explains the delay in obtaining service as
follows:

!         Upon filing suit, McKinney requested a constable to serve
Houck at Houck=s place of business.  On or about June 25, 2002, the constable
informed McKinney that service had been unsuccessful and that Houck was no
longer at that business address.

!         Before filing suit, after the first unsuccessful service
attempt, and until Houck was finally served, McKinney searched for Houck.

!         McKinney unsuccessfully attempted to obtain a residence
address for Houck.

!         McKinney initially checked a driver=s license database, which
reflected that Houck had listed the business address as the address on his
driver=s license.








!         McKinney=s office checked this driver=s license database eight
times before filing suit and monthly until early December, when McKinney
obtained from this database the address at which Houck was finally served on December
27, 2002.

!         McKinney contacted Houck=s probation officer, who
refused to provide him with any information concerning Houck=s whereabouts.

!         After the first unsuccessful service attempt, McKinney
considered pursuing substituted service on Houck through the probation
department but decided not to do so.

!         Forrest also registered with the State=s Victim Assistance Office
because Houck had been given shock probation. 
McKinney asked the contact person at the Victim Assistance Office for
Houk=s forwarding address, but
she refused to divulge it based on the privilege of confidentiality.

!         McKinney attempted to locate Houck=s parents, hoping to learn
something about his whereabouts from them or perhaps attempt substituted
service on Houck through his parents.  

!         McKinney tried to contact Houck through a phone number for
Houck=s father, but that phone
line was no longer in service.  McKinney
obtained a residence address for Houck=s parents, but upon
further investigation, McKinney learned that Houck=s parents no longer lived
there.  

!         Upon learning that Houck=s parents had allegedly
defaulted on a bank loan, McKinney contacted the bank=s attorney who informed
him that the bank was dismissing its lawsuit against Houck=s parents because the bank
had been unable to locate them and serve them with process.

!         McKinney had learned that another person whom Houck had
allegedly defrauded was an attorney and that another member of that person=s law firm attended the
same church as Houck=s father.  McKinney contacted the other alleged victim
to try to obtain the name of the lawyer who attended church with Houck=s father.  However, the other alleged victim did not
want to provide this information to McKinney because the person in question had
confronted the alleged victim to ask why she was trying to Acheat@ Stephen Houck, the son of
one of his fellow church members.








!         Knowing that Houck had been married, McKinney checked the
divorce records and learned that Houck and his wife had divorced. Hoping to
obtain information about Houck=s whereabouts from his ex-wife, McKinney tried to
locate her but was unable to find her.  

!         McKinney considered service by publication and hiring a
private investigator but pursued neither because of his client=s limited financial
resources.

            !         During the first week of December 2002, McKinney=s paralegal obtained an
address for Houck from a driver=s license database C 6524 San Felipe, #404,
Houston, Texas 77057.

!         McKinney contacted a private process server and
hand-delivered the service information to him on December 5, 2002, so that he
could serve Houck at this address.

!         After unsuccessfully attempting service at this address, the
private process server reported back that this address was a private mail box
service.  McKinney was surprised to learn
that this was not Houck=s residence address.

!         McKinney requested that Houck be served
by certified mail at this address and called at least three times to check on
service until service was finally effected at this address.

Houck did not introduce any
evidence that controverted McKinney=s
affidavit in this regard.  The trial
court granted summary judgment.

II.  Issue and
Analysis








In his first issue, Forrest
challenges the trial court=s summary
judgment based on his alleged lack of due diligence in having Houck served with
process.  It is undisputed that Forrest
filed suit against Houck before the limitations deadline, but served him after
it.  In this situation, filing suit
interrupts limitations only if Forrest exercised diligence in serving
Houck.  See Murray v. San Jacinto
Agency, Inc., 800 S.W.2d 826, 830 (Tex. 1990).  When a defendant moves for summary judgment
and shows that service occurred after the limitations deadline, the burden
shifts to the plaintiff to produce some evidence to explain the delay.  Brown v. Shores, 77 S.W.3d 884, 887
(Tex. App.CHouston [14th Dist.] 2002, no
pet.).  Lack of diligence may be shown as
a matter of law based on unexplained lapses of time between the filing of the
petition and service on the defendant.  Id.  Once the plaintiff presents an explanation,
the burden shifts back to the defendant to show why those explanations are
insufficient as a matter of law.  Carter
v. MacFadyen, 93 S.W.3d 307, 313 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied).  Due
diligence is determined by looking at the time taken and the effort expended in
procuring service.  Webster v. Thomas,
5 S.W.3d 287, 289B90 (Tex.
App.CHouston
[14th Dist.] 1999, no pet.). 

Houck has the burden to
conclusively establish the bar of limitations. 
Brown, 77 S.W.3d at 887. 
In deciding whether there is a disputed material fact precluding summary
judgment, we take as true all evidence favorable to Forrest, and we indulge
every reasonable inference in his favor. 
See id.  

A.        Did Forrest produce some evidence to
explain the delay in serving Houck?

Because Houck=s motion
proved that he was served after limitations expired, we must determine if
Forrest produced some evidence to explain his delay in effecting service on
Houck.  McKinney=s testimony
constitutes some evidence showing the following:

!         Forrest acted diligently in promptly requesting service on
Houck at the only address that Forrest had for Houck.

!         Forrest continued to act diligently in attempting to locate
and effect service on Houck from the filing of the petition until Houck was
served.

!         Forrest acted diligently in trying to obtain addresses at
which Houck could be served.

!         Forrest promptly attempted to effect
service on Houck after obtaining the address at which Houck was ultimately
served.








The summary-judgment evidence
shows that a major cause of the delay in effecting service on Houck was his use
on two occasions of an address other than his residence address for his driver=s
license, in apparent violation of Texas law. 
See Tex. Transp. Code '
521.121(a)(3) (stating driver=s license
must include the residence address of the holder).  The summary-judgment evidence indicates that,
if Houck had provided his residence address for his driver=s
license, he would have been served well before limitations expired rather than
twelve days after limitations expired. 
Based on this record, we conclude that Forrest has produced some
evidence explaining the delay in serving Houck. 
See Tranter v. Duemling, 129 S.W.3d 257, 259B63 (Tex.
App.CEl Paso
2004, no pet.) (holding plaintiff presented some evidence explaining delay in
service); Edwards v. Kaye, 9 S.W.3d 310, 315 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied) (holding plaintiff presenting some evidence of
due diligence in obtaining service).

B.        Has Houck shown that Forrest=s explanations are
insufficient as a matter of law?

Because Forrest produced some
evidence explaining the delay in effecting service on Houck, we must now
determine if Houck has shown that Forrest=s
explanations are insufficient as a matter of law.  Houck asserts that Forrest=s
explanations are insufficient as a matter of law because they show that he
focused on regularly checking the driver=s license
records but took no other steps to find Houck through other means, such as
checking telephone listings or using Apeople
search@
resources available on the internet. 
This argument is not supported by the record.  McKinney testified that, from the filing of
the suit until Houck was served, he searched for Houck and that McKinney unsuccessfully
attempted to obtain a residence address for Houck.  A reasonable inference from this testimony is
that McKinney searched for Houck=s
residence address by ordinary means, such as telephone directories.  Furthermore, McKinney=s
affidavit details several attempts to discover Houck=s
whereabouts other than checking the driver=s license
database.  Moreover, Houck has not
alleged or presented evidence that his residence address was contained in any
telephone directory or internet search resource.  








Houck also faults Forrest for not
trying to obtain substituted service through Houck=s
probation office.  Before seeking
substituted service through Houck=s
probation office, Forrest first would have had to attempt to effect service on
Houck there and then he would have had to file a motion and sworn proof showing
that the probation office is a Aplace
where the defendant can probably be found.@  See Tex.
R. Civ. P. 106; Garrels v. Wales Transp., Inc., 706 S.W.2d 757,
759 (Tex. App.CDallas 1986, no writ).  Given the potential difficulty of obtaining
proof that Houck=s
probation office is a place where Houck can probably be found and convincing
the trial court to permit substituted service through the probation office, we
conclude that Forrrest=s failure
to seek substituted service through Houck=s
probation office does not show, as a matter of law, that Forrest=s
explanations are insufficient.

Houck also argues that Forrest=s failure
to hire a private investigator or attempt service by publication show lack of
diligence as a matter of law.  Houck
cites no cases holding that such conduct proves lack of diligence as a matter
of law, and we conclude that the failure to take such measures does not show
lack of diligence as a matter of law.  See
Morgan v. Hardy, 57 S.W.2d 204, 207 (Tex. Civ. App.CEl Paso
1933, no writ) (holding that failure to attempt service by publication does not
constitute lack of diligence in serving process as a matter of law).  

III. 
Conclusion








Houck=s only ground for summary
judgment was the affirmative defense of limitations.  Because Houck showed that service occurred
after expiration of limitations, the burden shifted to Forrest to produce some
evidence to explain the delay in effecting service on Houck.  Because Forrest has produced some evidence
explaining the delay in effecting service and because Houck has not shown that
these explanations are insufficient as a matter of law, Houck has not
conclusively proved his entitlement to judgment as a matter of law based on
limitations.  Accordingly, we sustain
Forrest=s first
issue, reverse the trial court=s
judgment, and remand for further proceedings consistent with this opinion.[1]


 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and
Memorandum Opinion filed September 28, 2004.

Panel consists of Chief
Justice Hedges and Justices Frost and Guzman.

 

 











[1]  Based on our
disposition of Forrest=s first issue, we need not address his second issue.