**Stephen Phillip CARTER, Individually, and as Next Friend of Jessica Dawn Carter, Appellant,**

**v.**

**Bruce MACFADYEN, M.D., and Memorial Hermann Health System, Inc., d/b/a Hermann Hospital, Appellees.**

No. 14–01–00536–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 2002.

David Scott Carlile, Marshall, for Appellant.

Lucille Anderson Reiter, Richard M. Law, Solace Kirkland Southwick, Houston, for Appellees.

Panel consists of Chief Justice BRISTER and Justices HUDSON and GUZMAN.

## OPINION

SCOTT BRISTER, Chief Justice.

On August 27, 1997, Bruce MacFadyen, M.D. performed surgery on Stephen Phillip Carter at Hermann Hospital to correct a blockage in his bile duct. Following surgery, Carter was placed in the intensive care unit. While there, his physical condition deteriorated, and eventually leaks in both his bile duct and duodenum were discovered. Abdominal sepsis and other problems resulted in Carter's hospitalization until November 1997.

Carter filed this health care liability claim *pro se* in November 1999, two years after discharge. Hermann Hospital was served promptly, but Carter did not serve Dr. MacFadyen until eight months later.[1] Little happened in the litigation until the fall of 2000, when Carter finally obtained counsel, Hermann Hospital moved for summary judgment on no-evidence grounds, and Dr. MacFadyen did the same based on limitations. The trial court granted the defendants' motions, and Carter appeals.

The primary question presented is whether the diligent—indeed, almost heroic—efforts of Carter's new attorney can overshadow the much less diligent efforts of Carter himself while he acted *pro se*. Finding we must judge diligence based on all the facts rather than merely those oc-

---

1. Carter named two other doctors as defendants in the suit, but this appeal does not concern them.

curring after counsel was retained, we agree with the trial court those efforts were too little and too late, and thus affirm.

### Carter's Motion for Continuance

Hermann Hospital filed its original answer on December 10, 1999, and at the same time served requests for disclosure, production, and interrogatories on Carter. The parties agree that because there was no pleading or court order to the contrary, the default discovery period was to end ten months later, on October 10, 2000. *See* Tex.R. Civ. P. 190.3(b)(1)(B)(ii). Hermann filed its motion for summary judgment on July 21, 2000, more than eight months after Carter's petition, and less than three months before the end of discovery. Two weeks later, Carter retained counsel. The motion was granted on August 15, 2000, almost two months before the end of the discovery period under Rule 190.3.

In his first point of error, Carter argues the trial court should have granted his motion to continue the summary judgment hearing.[2] We review the trial court's ruling for an abuse of discretion. *See Clemons v. State Farm Fire & Cas. Co.*, 879 S.W.2d 385, 393 (Tex.App.-Houston [14th Dist.] 1994, no writ).

■ Generally, it is not an abuse of discretion to deny a motion for continuance if a party has received the 21–days' notice required by Rule 166a(c). *Id.* at 394. A party seeking more time to oppose a summary judgment must file an affidavit describing the evidence sought, explaining its materiality, and showing the due diligence used to obtain the evidence. Tex.R. Civ. P. 166a(g), 251, 252. The affidavit must show why the continuance is necessary; conclusory allegations are not sufficient. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520–22 (Tex.1995) (holding further time for discovery unnecessary as construction of unambiguous contract required no discovery).

■ Here, Carter's counsel filed a two-paragraph affidavit stating he had been retained ten days before the scheduled hearing, and needed more time to obtain a complete copy of the pleadings and conduct "both written and oral discovery." No doubt this was true, as Carter had conducted absolutely no discovery up to that time. But without any specifics, the affidavit gave no basis for the trial court to weigh the materiality of the requested discovery or the length of continuance that would be needed. Further, although Carter's attorney averred the request for continuance was "not due to any lack of diligence on the part of the Plaintiff," he gave no explanation for why nine months had passed without any discovery. A last minute attempt does not constitute diligence. *See Hatteberg v. Hatteberg*, 933 S.W.2d 522, 527 (Tex.App.-Houston [1st Dist.] 1994, no writ).[3] Thus, we find the trial

---

2. Although we find no express ruling denying the continuance, the trial judge's order granting Hermann's Motion for Summary Judgment provides that he read the briefs (which included Carter's request for a continuance) and dismissed the claims against Hermann. Thus, the trial judge implicitly denied Carter's motion for continuance. *See* Tex.R.App. P. 33.1(a)(2)(A).

3. Several opinions suggest a continuance may be required when a new lawyer is retained after a trial court allows counsel to withdraw shortly before a trial or summary judgment. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986); *Kahanek v. Rogers*, 900 S.W.2d 131, 134 (Tex.App.-San Antonio 1995, no pet.). But withdrawal is subject to trial court approval and the imposition of additional conditions. *See* Tex.R. Civ. P. 10. A different situation is presented when a *pro se* party retains an attorney for the first time at the last moment. Moreover, any difficulties Carter

court did not abuse its discretion in denying the request, and overrule Carter's first point of error.

### Adequate Time for Discovery

■ In his second issue, Carter argues that whether or not his motion for continuance was proper, the summary judgment was improper because an adequate time for discovery had not passed as a matter of law. Again, we review for an abuse of discretion. *See Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

■ Hermann's no-evidence motion for summary judgment could be filed only after an "adequate time for discovery." Tex.R. Civ. P. 166a(i). While a comment to rule 166a states that "ordinarily a motion . . . would be permitted after the [discovery] period but not before," we do not read the comment to prohibit an earlier motion in all cases. *See* Tex.R. Civ. P. 166a cmt. (1997); *Gourrier v. Joe Myers Motors, Inc.,* 78 S.W.3d 651 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Obviously, additional discovery is a waste of time and expense if it will make no difference. *See Nat'l Union Fire Ins.,* 907 S.W.2d at 522 (holding appellate court erred in finding summary judgment premature, as construction of unambiguous contract required no additional discovery). Instead, an adequate time for discovery depends upon the nature of the claims, the evidence needed to controvert the motion, the length of time the case has been on file, and any deadlines set by the court. *See Specialty Retailers,* 29 S.W.3d at 145.

■ Here, Hermann filed its motion for summary judgment more than eight months after Carter's petition. Generally,

a trial court may presume a plaintiff has investigated his own case prior to filing. *McAllister v. Samuels,* 857 S.W.2d 768, 773 (Tex.App.-Houston [14th Dist.] 1993, no writ). This is especially true of health care liability claims, which require within six months of filing an expert report establishing standard of care, negligence, and causation. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, §§ 13.01(d), (r)(6) (Vernon Supp. 2002).

Hermann's motion was filed less than three months—and granted less than two months—before the end of the discovery period. Carter's response to Hermann's motion did not indicate why the months past were insufficient for adequate discovery, or what specific discovery needed to be completed. Instead, he only indicated that, having recently retained counsel, he was finally ready to start.

■ Because local dockets, scheduling practices, disruptive weather, the assumptions of the bar, and a myriad of other factors may affect an "adequate time for discovery," we must defer to a trial court's discretion, absent abuse. *See generally McClure v. Attebury,* 20 S.W.3d 722, 729–30 (Tex.App.-Amarillo 1999, no pet.) (adopting abuse-of-discretion standard in part because of trial court's broad powers over discovery matters). Because reasonable minds could disagree here, we cannot substitute our judgment for that of the trial court. *See City of Pharr v. Tippitt,* 616 S.W.2d 173, 176 (Tex.1981) (explaining that when reasonable minds could differ, no abuse of discretion was shown). We overrule Carter's second point of error.

### Hermann's No–Evidence Motion

■ Despite his objections to the trial court's deadlines, Carter's counsel was

---

may have had in retaining counsel were not raised as grounds in the motion for continu-

ance.

able to file a response to Hermann's no-evidence summary judgment motion, which challenged every element of Carter's health care liability claim. In his third point of error, Carter argues his expert's affidavit raised a material fact issue on every element. We review the evidence in the light most favorable to Carter to determine if he did so. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 208 (Tex. 2002).

■■■■ The only evidence Carter filed was the affidavit of Dr. Charles Marable; the only portion of that affidavit addressing the elements of Carter's claims is the following:

> The Herman[n] Hopsital [sic] owes a well-recognized duty of care to monitor its patients and provide competent staff trained to diagnose and care for patients that have suffered surgery complications. It is my expert opinion ... that Herman[n] Hospital breached its duty to Stephen Carter. Further, [i]t is my opinion that the failure to properly diagnose, monitor, and treat Mr. Carter by intensive care staff at Herman[n] Hospital is below the accepted standard of care.

> As a result of this negligent activity, the patient required ICU placement, underwent renal failure, had multiple GI infections and required multiple procedures such as a jejunostomy and gastrostomy tube. The patient underwent a 3–month stay in the hospital with extensive injuries, and has been hospitalized over 20 times since his release from Herman[n] Hospital. It is my expert opinion that the breach of the standard of care by Herman[n] Hospital as described above was a direct cause of Mr. Carter's injuries and the adverse complications that he suffered as a result of his surgery.

This affidavit contains not one specific about what the intensive care staff should have done to meet the standard of care or why the outcome would have been different had things been done correctly. *See Hall v. Tomball Nursing Ctr. Inc.,* 926 S.W.2d 617, 620 (Tex.App.-Houston [14th Dist.] 1996, no pet.) (finding affidavit conclusory because it failed to specify what actions met duty to monitor). It is specific about the complications Carter suffered, but excepting that (and the names of the parties), this affidavit could be filed in every health care claim brought against a hospital. This is simply not enough. "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999) (holding statement that defendant "met the standard of care" insufficient for summary judgment). "Conclusory statements by an expert are not sufficient to support or defeat summary judgment." *Blan v. Ali,* 7 S.W.3d 741, 748 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding affidavit that failed to explain how better treatment would have produced better outcome was insufficient to create a fact issue). We overrule Carter's third point of error.

In a cross-point, Hermann argues the trial court should have dismissed Carter's claim for failing to file an adequate expert report. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.2002). In view of our decision to affirm Hermann's motion for summary judgment, the cross-point is moot.

### *Dr. MacFadyen's No–Evidence Motion*

■■■ In his fourth and fifth points of error, Carter argues the trial court erred in granting Dr. MacFadyen's motion for summary judgment based on limitations. It is undisputed that Carter filed suit

against Dr. MacFadyen before the limitations deadline, but served him after it.

▪ Filing suit interrupts limitations only if a plaintiff exercises diligence in serving the defendant. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex.1990). When a defendant moves for summary judgment and shows that service occurred after the limitations deadline, "the burden shifts to the plaintiff ... to explain the delay." *Id.; see also Brown v. Shores*, 77 S.W.3d 884, 888–89 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (Brister, C.J., concurring) (discussing possible conflict between *Murray* and *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975) (requiring plaintiff merely to plead diligence)). The plaintiff's evidence must explain *every* period of delay. *See Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990). Once the plaintiff presents an explanation, the burden shifts back to the defendant to show why those explanations are insufficient as a matter of law. *Belleza–Gonzalez v. Villa*, 57 S.W.3d 8, 11 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

▪ Due diligence is determined by looking at the time taken and the effort expended in procuring service. *Webster v.*

*Thomas*, 5 S.W.3d 287, 289–90 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Despite filing suit *pro se*, Carter is held to the same standard of diligence applicable to a licensed attorney. *Weaver v. E–Z Mart Stores, Inc.*, 942 S.W.2d 167, 169 (Tex. App.-Texarkana 1997, no pet.).

Carter's allegations of negligence against Dr. MacFadyen stem from the surgeries performed on August 27, 1997.[4] Carter filed suit within the limitations period on November 8, 1999.[5] Carter, however, did not serve Dr. MacFadyen until July 26, 2000, well after the limitations period had run.[6] The summary judgment evidence on the question of diligence and excuse consists of the following:

- On November 8, 1999, Carter filed suit and requested service on Dr. MacFadyen.
- On January 24, 2000, Deputy Constable Parr received the citation for Dr. MacFadyen and attempted service without success on January 25, 26, and 27, 2000.
- Carter then hired a private process server who attempted service unsuccessfully on February 15, February 22, March 16, and April 3, 2000.[7]

4. Although Carter asserts limitations did not begin running until he was discharged from the hospital in November 1997, his allegations against his surgeon stem from the surgery itself, and thus limitations runs from that date. *See Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987) (holding claim against anesthesiologist accrued on date of surgery, not on date of subsequent discharge from the hospital).

5. Limitations was extended for seventy-five days because Carter sent a notice of claim. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 4.01(c) (Vernon Supp.2002).

6. Carter alleges the statute of limitations was tolled because he was of "unsound mind" until his release from the hospital in November 1997. But the statute bars application of

this tolling provision to health care liability claims, and Carter has not challenged the constitutionality of the statute. *See* Tex.Rev. Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp.2002); *West v. Moore*, No. 14–00–01478–CV, 2002 WL 122147, at *3, —— S.W.3d ——, —— (Tex.App.-Houston [14th Dist.] Jan. 31, 2002, no pet.); *Jones v. Miller*, 964 S.W.2d 159, 163 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

7. The affidavit by this server, John Brigham, also alleged he attempted service on March 2, 2000, March 28, 2000, and April 6, 2000. Because Brigham mentioned none of these dates in his earlier affidavit to support substituted service, Dr. MacFadyen objected to consideration of them, and the trial court sustained the objection. Carter does not challenge that order on appeal. Even if we were

- Carter moved for substituted service on July 5, which was granted on July 7,[8] and accomplished by posting on July 26.

Here, there are several gaps as to which there is no evidence of any efforts at service of process. First, two and one-half months passed between filing and the first service attempts. An affidavit by Constable Richard Parr indicates the citation was transferred from Precinct 7 to Precinct 5, but does not indicate why.[9] It was Carter's responsibility, not the constable or process server, to see that service was accomplished during this period. See *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex.1994); *Webster*, 5 S.W.3d at 290–91 (finding lack of diligence in part because of counsel's mistake or negligence in sending citation to wrong precinct).

Second, three months passed between April 3, 2000 and July 5, 2000, again without explanation. Although Carter filed an affidavit stating that he "was hospitalized at least two times while attempting to perfect service on Dr. MacFadyen and my health was generally poor," the affidavit provides no specifics.[10] As there were two hospitalizations, they obviously could not have covered the entire period. Nor is there any explanation why either the hospitalizations or Carter's pain rendered him unable to act.

■ Finally, there is no explanation why Carter kept trying to serve Dr. MacFadyen personally for four months, when it was clear the doctor could not or would not cooperate with those efforts. Unlike many other due diligence cases, the defendant's usual place of business here was quite clear. Although Constable Parr advised Carter in January to seek substituted service, he did not do so until July. See *Webster*, 5 S.W.3d at 291 (finding no diligence as a matter of law when plaintiff made efforts at service, but they were careless and not persistent). A flurry of ineffective activity does not constitute due

---

to consider these additional dates, it would only extend the time of attempted service three days. Dr. MacFadyen also submitted an affidavit from Mary Carson, his senior staff assistant, alleging that no one came to his office to attempt to serve citation between November 1999 and July 26, 2000, and disputing Brigham's assertion that he was told Dr. MacFadyen was out of the office on certain dates.

**8.** Carter also argues there is an implied finding that he exercised due diligence before July 26, 2000, because the trial court granted his motion for substituted service. As Dr. MacFadyen points out, however, the trial court is authorized to allow substituted service merely on a showing that service "has not been successful." Tex.R. Civ. P. 106(b).

**9.** Carter's counsel filed an affidavit regarding conversations he had with various constables and staff about this transfer, but the trial court sustained Dr. MacFadyen's hearsay objection to the affidavit, and again Carter does not assert error in that ruling.

**10.** After the hearing and without leave of court, Carter filed almost identical affidavits from several family members indicating he (1) was hospitalized in Lubbock for one day on May 16, 2000; (2) was hospitalized in California for five days beginning June 25, 2000, during which he was in an "atrocious" amount of pain; (3) traveled to California in between these dates to try to find work; (4) suffered from "lengthy and difficult" recuperation after each hospitalization; and (5) was in "constant contact" with his private process server. Because no order allowed them to be filed late, we may not consider them. See *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex.1996).

These affidavits were timely filed in the later summary judgment proceedings regarding his daughter's loss-of-consortium claim, but were inconsequential because dismissal of Carter's claim extinguished his daughter's derivative claim. See *Nash v. Selinko*, 14 S.W.3d 315, 318 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding that running of limitations on parent's claim extinguishes child's loss-of-consortium claim).

diligence if easily available and more effective alternatives are ignored. *Doue v. City of Texarkana,* 786 S.W.2d 474, 477 (Tex. App.-Texarkana 1990, writ denied) (finding no diligence in locating defendant before citation by publication when counsel searched many sources for correct address but ignored address in his own files).

Thus, we agree with the trial court there is no evidence of diligence for most of the eight months preceding Carter's request for substituted service. We overrule appellant's fourth and fifth points of error, and affirm the judgment of the trial court.