# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-08-00204-CV

---

**Charles Hull, Appellant**

**v.**

**Abel Dutch Vidaurri, Appellee**

---

### FROM TRAVIS COUNTY, COUNTY COURT AT LAW NO. 2,
### HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Charles Hull was involved in an automobile collision with Abel Vidaurri. Vidaurri later sued Hull for injuries and property damage sustained as a result of the collision; however, Hull was not served until several months after the statute of limitations had expired. At the conclusion of the trial, the jury found that Vidaurri was diligent in his efforts to serve Hull and awarded Vidaurri compensatory and punitive damages. Because we ultimately conclude that there was insufficient evidence to support the jury's diligence determination, we will reverse the judgment of the trial court.

## BACKGROUND

On February 19, 2003, Vidaurri and Hull were involved in an automobile collision. As a result of the collision, Vidaurri later sued Hull for negligence. Vidaurri filed his petition around

the end of the two-year statute of limitations.[1]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2008) (explaining that in general, person must bring personal-injury claim within two years of "day the cause of action accrues").  Although the case was filed near the end of the limitations period, service of process was not successfully completed until approximately six months after the statute of limitations had run.

After Hull was served, a trial ensued.  Hull stipulated to ordinary negligence and to property damage to Vidaurri's vehicle.  After the parties rested, the jury awarded Hull compensatory and punitive damages and specifically determined that Vidaurri had made diligent efforts to serve Hull.  Once the jury released its findings, Hull moved for a judgment notwithstanding the verdict, arguing, in part, that there was no evidence that Vidaurri acted with the requisite level of diligence.  The trial court denied the motion.  In its judgment, although the trial court reduced the punitive damage award in order to comply with the statutory cap, *see* Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b) (West 2008), the court awarded Vidaurri all of the remaining compensation recommended by the jury.  Hull appeals the judgment of the trial court.

**DISCUSSION**

On appeal, Hull contends, among other things, that the trial court erred by concluding that Vidaurri had made diligent efforts to execute service of process because the evidence supporting that determination is legally insufficient.  When performing a legal-sufficiency analysis, courts must

---

[1] During the trial, Hull alleged that the petition was not filed until after the limitations period had run.  However, the jury determined that Vidaurri's petition was filed within the statutory deadline.  Hull does not challenge this determination on appeal.

determine whether the evidence presented would allow "reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The evidence presented is legally insufficient if the record shows "a complete absence of evidence of a vital fact," if "the evidence offered to prove a vital fact is no more than a mere scintilla," or if "the evidence establishes conclusively the opposite of the vital fact." *Id.* at 810 (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361 (1960)). Because this issue is dispositive, we need not address the other arguments made by Hull.

It is undisputed that service was not performed until after the statute of limitations had run. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). To properly bring suit, a plaintiff must file his petition and execute service of process on the defendant. *Boyattia v. Hinojosa*, 18 S.W.3d 729, 733 (Tex. App.—Dallas 2000, pet. denied). Filing a lawsuit, on its own, will not "avoid the expiration of a statute of limitations." *Id.* When service is not performed until after the limitations period has run, a plaintiff must justify the delay in service. *See Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007). In other words, a plaintiff must present evidence concerning the efforts that he made to serve the defendant and "to explain every lapse in effort or period of delay." *Id.* at 216. If the delays are unexplained or "patently unreasonable," the evidence "may demonstrate a lack of due diligence as a matter of law." *Id.*; *see also Holt v. D'Hanis State Bank*, 993 S.W.2d 237, 241 (Tex. App.—San Antonio 1999, no pet.) (stating that "unexplained delay constitutes a lack of due diligence as a matter of law"). In other words, although a diligence determination is typically a fact question, the record may establish a lack of diligence as a matter of law. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009). Although the passage of time is an important factor to consider,

3

courts must also consider the "overall effort expended over the gap in service, and whether the search ceased to be reasonable, especially when other methods of service were available." *Id.* at 181; *see Proulx*, 235 S.W.3d at 216 (explaining that courts must consider how long it took plaintiff to execute service and "the type of efforts . . . the plaintiff expended in procuring service"). If the plaintiff did not exercise due diligence, "the lawsuit is deemed filed on the date of service." *Holt*, 993 S.W.2d at 241. When assessing whether the plaintiff exercised the requisite level of diligence, courts must consider "whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Proulx*, 235 S.W.3d at 216; *see Hodge v. Smith*, 856 S.W.2d 212, 215 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Moreover, the duty of due diligence is continuous and extends until the date service is executed. *Taylor v. Thompson*, 4 S.W.3d 63, 65 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). In analyzing these types of cases, courts must bear in mind that it "is the responsibility of the party requesting service, not the process server to see that service is properly accomplished." *Id.*

For the reasons discussed above, Vidaurri had the burden of demonstrating that he acted with due diligence in his attempts to serve Hull and of presenting evidence explaining the delay in service. *See Proulx*, 235 S.W.3d at 215.

At the time this case was filed, Sara Parham was the lawyer at the law firm representing Vidaurri with primary responsibility for the case. Much of the testimony relating to service of process pertains to her efforts, but Parham did not testify. During the trial, three witnesses testified regarding the efforts made to serve Hull. The first was an attorney, Chris Morgan, who had

4

been hired by Hull to represent him in an unrelated matter. In his testimony, Morgan explained that his representation of Hull ended somewhere between the middle of April 2005 and May 1, 2005, approximately two months after the lawsuit in this case was filed. The second witness was a process server, Barbara Stinnet, who was hired by the law firm representing Vidaurri. The final witness was Debra Foster, who was a legal assistant at the firm representing Vidaurri.

The testimony of Morgan and Stinnet revealed that there was a significant period of time in which no steps were taken to execute service of process. In particular, their testimony explained that the following events occurred in 2005:

- February 25: Stinnet attempted to execute service at Hull's parents' home but was told that he no longer lived there. However, Hull's parents did give Hull's cell phone number to Stinnet

- February 26: Stinnet entered Hull's name into a database to try and find another address at which to serve him

- February 28: Stinnet attempted to execute service at the address found in the database but was told by the occupant that he had just moved in there and did not know Hull

- March 1: Stinnet contacted the post office to determine if Hull was listed as receiving mail at either of the locations at which she had attempted to execute service

- March 2: Stinnet called the number given to her by Hull's parents and left a message

- March 3: Hull returned Stinnet's call and told her to send the documents to Morgan

5

- March 3: Parham called Morgan and left a message stating that Hull asked her to send the service documents to Morgan[2]

- March 4: Stinnet called Parham and left a message asking for further instructions

- March 10: Stinnet called Parham[3] again because she had not heard from her. Regarding the conversation, Stinnet stated that she felt the service was "on hold" because Parham had not decided how to proceed

- March 29: Morgan called Parham and told her that Hull had given him permission to accept service on behalf of Hull.[4] During that conversation, Morgan and Parham discussed the need for a rule 11 agreement[5] regarding the service documents. Morgan stated that he never received the discussed agreement or any process documents

- Sometime after March 29: Morgan received three phone calls regarding Hull, but he testified that he did not know who made the calls or whether the same person made all three calls. Regarding one of the calls, he stated that he informed the caller that he no longer represented Hull and, therefore, could not accept service for him. In his testimony, Morgan indicated that the conversation described above occurred in the summer

- April 22: Stinnet called Parham and left a message asking for an update

- Mid April to May 1: Morgan's representation of Hull terminated

- May 1-May 5: Stinnet received notice from the post office that Hull was still listed as receiving mail at his parents' house but not at the second address where Stinnet attempted to execute service

---

[2] A written copy of the message was filed as an exhibit in this case.

[3] We note that in some of Stinnet's testimony, she refers to Vidaurri's firm rather than Parham individually.

[4] Morgan's notes regarding the phone call were also submitted as an exhibit.

[5] *See* Tex. R. Civ. P. 11 (requiring agreement between attorneys or parties to be in writing and to be signed and filed).

- **May 1:** Stinnet left a message for Parham stating that she had received information from the post office showing that Hull was listed as actively receiving mail at his parents' house

- **Sometime on or before August 1:** Stinnet received a phone call from a new attorney at the firm Vidaurri hired. The attorney informed her that he had taken over the case, and Stinnet told the new attorney that she believed that Hull had agreed to allow Morgan to accept service on his behalf

- **August 1:** the new attorney called Stinnet and informed her that Morgan would no longer accept service on behalf of Hull and instructed her that she must now execute service in person

- **Sometime between August 1 and August 5:** Stinnet called Hull again and left a message. Hull returned her call and gave her an address in Dallas for delivery of the process documents

- **August 5:** Stinnet mailed the documents to the address given to her by Hull

- **August 25:** The documents were returned to Stinnet as "undeliverable"[6]

- **September 1:** Vidaurri files a motion for substituted service[7]

- **September 6:** Stinnet executes substituted service at Hull's parents' home

The testimony of Stinnet and Morgan reveals that there was a significant lapse in efforts to serve Hull starting in March. Although Parham left a message for Morgan in early March, the testimony indicates that Parham made no follow up effort. Instead, Morgan called Parham

---

[6] In her testimony, Stinnet stated that after the service documents were returned, she made two further attempts to contact Hull on the phone. Regarding the first attempt, she specified that she called Hull and that when she was about to leave a message, he called her back. Further, she explained that sometime after she answered his call, he asked to place her on hold and that she hung up after being on hold for a minute or two. Regarding the second attempt, she stated that she tried to call Hull back after hanging up on him but that her call went straight to his voicemail. Stinnet could not recall whether she had left a message during the last phone call.

[7] *See* Tex. R. Civ. P. 106(b) (allowing service to be executed in manner other than by delivering documents to person when attempts to serve person have been unsuccessful).

approximately three weeks later to discuss accepting service for Hull. Although Morgan testified that he agreed to accept service for Hull, he stated that no service documents were ever sent. In light of the preceding and in light of Vidaurri's burden to demonstrate his efforts in furtherance of service, it is questionable whether the Morgan-initiated call could serve as evidence of diligence by Vidaurri.

Assuming for the sake of argument that Morgan's call on March 29 could properly serve as evidence of diligence, the testimony summarized above reveals a four-month gap between when Morgan agreed to accept service on behalf of Hull (March 29) and when a lawyer instructed Stinnet to obtain a current address for Hull so that service of process could be executed in person (August 1). Although Stinnet received information from the post office and made multiple calls to Parham asking for further instructions, Stinnet did not engage in any efforts to serve Hull during that time and was not given further instructions until August 1. In fact, in her testimony, Stinnet admitted that from *March 4* to August 1 she made no attempt to serve Hull, did not call Hull, and did not try to ascertain his location. Moreover, she testified that it was her impression that "the papers were on hold" and that the "hold" did not have anything to do with trying to ascertain where Hull was staying. Furthermore, she testified that despite leaving several messages for Parham in March, April, and May, no one from the firm returned her calls until several months later when the new attorney called her and informed her that he had taken over the case. In addition, although Morgan did testify that he only represented Hull for a few more weeks after informing Parham that he would accept service for Hull, Morgan stated that no one ever sent him any process documents.

As summarized above, Morgan and Stinnet mentioned several phone calls that they received after the first gap was over. For some of the calls, Morgan and Stinnet provided the date

8

on which those calls were made, but they provided no specific chronological information regarding four of the phone calls listed above. In particular, Morgan testified regarding three phone calls that he received concerning Hull, and Stinnet mentioned a phone call from a new attorney at the firm Vidaurri had hired.

Regarding two of the calls to Morgan, other than stating that the calls related to Hull, Morgan provided no information about the calls and stated that he did not know who had made those calls. In other words, he did not mention whether he actually talked with anyone or what, if anything, was discussed during those calls. Accordingly, nothing in his testimony could serve as a basis from which the jury could reasonably infer that those calls were made in furtherance of service of process. Moreover, although Morgan intimated that those two calls occurred after he told Parham that he would accept service for Hull, Morgan provided no information from which the jury could determine if the calls occurred in the four-month gap, and no other evidence in the record makes any reference to these calls. *Richard v. Turner*, No. 13-08-00015-CV, 2009 Tex. App. LEXIS 6973, at *6-7 (Tex. App.—Corpus Christi Aug. 31, 2009, pet. filed) (mem. op.) (concluding that record established lack of due diligence as matter of law and noting that plaintiff failed to provide specific dates regarding service efforts); *see also City of Keller*, 168 S.W.3d at 813 (explaining that if circumstances are equally consistent with two facts, neither may be inferred).

Regarding the other call, Morgan stated that he talked to someone and informed that person that he no longer represented Hull and, therefore, could not accept service on behalf of Hull. No specific date was given regarding when this call was made. It is worth noting that of the three phone calls mentioned by Morgan, this is the only phone call for which Morgan provided testimony relating to the furtherance of service of process. Although Morgan did not identify who the caller

9

for the third call was, in light of Stinnet's testimony, the jury could reasonably have inferred that the caller was an attorney from the firm Vidaurri had hired. Specifically, Stinnet testified that she received a phone call from a new attorney at the firm representing Vidaurri informing her that he was taking over the case and that during that call, she informed the attorney that Hull had authorized Morgan to accept service. From this testimony, the jury could reasonably infer that Morgan talked to the new attorney. As with the call to Morgan, Stinnet provided no explanation regarding when she received the call.

Although no date was given regarding either of the above calls, Stinnet also testified that she received a second call from the new attorney on August 1, in which the attorney informed her that Morgan would not accept service for Hull. In light of Stinnet's testimony regarding the second call, the jury could reasonably have inferred that the two calls described above occurred during the four-month gap. However, other than those two calls, the testimony summarized above does not support an inference that any additional steps in furtherance of service of process were made during the gap.

Moreover, the testimony of Stinnet revealed that despite the failed attempts to execute service on Hull in February, no attempt to execute substituted service was attempted until six months later in September. *Cf. Carter v. MacFadyen*, 93 S.W.3d 307, 314-15 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("A flurry of ineffective activity does not constitute due diligence if easily available and more effective alternatives are ignored").

The gap in service and the decision to forgo substituted service until late September, if unexplained, would establish a lack of due diligence as a matter of law. *See Proulx*, 235 S.W.3d at 216. *Compare Ashley*, 293 S.W.3d at 180-81 (Tex. 2009) (explaining that evidence that plaintiff,

over eight-month period, searched for defendant for 20 hours was insufficient as matter of law), *Mauricio v. Castro*, 287 S.W.3d 476, 480 (Tex. App.—Dallas 2009, no pet.) (holding that defendant was entitled to directed verdict when no evidence was admitted to explain thirty-one-day delay between day statute of limitations expired and date of service), *Mitchell v. Timmerman*, No. 03-08-00320-CV, 2008 Tex. App. LEXIS 9710, at *22 (Tex. App.—Austin Dec. 31, 2008, no pet.) (mem. op.) (stating that four-month delay in serving defendant constituted lack of due diligence as matter of law), *Zimmerman v. Massoni*, 32 S.W.3d 254, 256 (Tex. App.—Austin 2000, pet. denied) (upholding jury determination that plaintiff was not diligent when he served defendant four months after filing suit despite evidence that lapses between efforts to serve were relatively small and despite repeated attempts at service in person and by alternative means), *and Taylor*, 4 S.W.3d at 65 (concluding that even though most of four-month delay in service occurred within limitations period, failure to explain delay rendered case barred by statute of limitations), *with Proulx*, 235 S.W.3d at 217 (determining that evidence of 30 attempts at service at five addresses over eight-month period and of hiring of two process servers and two investigators was sufficient to create fact issue regarding diligence), *and Franklin v. Bullock*, No. 03-07-00511-CV, 2008 Tex. App. LEXIS 6239 (Tex. App.—Austin Aug. 14, 2008) (mem. op.) (concluding that there was fact issue precluding summary judgment regarding diligence when evidence showed repeated attempts at service at various residences over three-month period).[8]

---

[8] Prior to oral argument in this case, Vidaurri filed a post-submission brief containing a recent appellate decision. *See Lawrence v. Geico Gen. Ins.*, No. 01-07-00873-CV, 2009 Tex. App. LEXIS 5082 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op.). In that case, the court upheld a jury determination finding that Geico acted diligently in serving Lawrence even though there was a gap of eight or nine months between when the case was filed and when service was executed. *Id.* at *10-11. In light of that case, Vidaurri argues that he was acting diligently.

On appeal, Vidaurri attempts to explain the delay by referring to the testimony of Foster.[9] During the trial, Foster stated that she worked for Parham—the attorney originally assigned to this case—at the time this suit was filed. In her testimony, Foster admitted that she never had any direct contact with Hull, Morgan, or Stinnet during the time period in question. Further, she testified that during the relevant time period she was the assistant working on Vidaurri's file and explained that her testimony was based in part on the notes in the file.[10]

In light of the preceding, Foster made several generalized statements regarding efforts that had been made in furtherance of service of process. Specifically, she stated that her firm tried to serve Hull several times, that the "attorneys" in the firm were trying to serve Hull, that "many people" from the firm tried to call Hull "over many periods of time" but that Hull did not return any

However, we believe Vidaurri's reliance on this case is misplaced. In *Lawrence*, although the gap between the file date and service was longer than the delay in this case, there was no unexplained gap as large as the one present in this case. When explaining the delay in service, Geico showed that there was a delay in the first two months because the trial court did not issue the citation until two months after Geico filed suit despite the fact that Geico specifically asked for immediate citation. *Id.* at *3. Further, Geico presented evidence that during the third month its process server attempted to serve Lawrence five times, repeatedly called Lawrence, and found eight potential addresses for Lawrence. *Id.* at *3-4. Regarding the fourth and fifth months, Geico stated that it attempted to execute service at the eight additional addresses. *Id.* at *4. Finally, Geico stated that in the seventh month it filed a motion to serve Lawrence by publication, that the court granted the request in the eighth month, and that the notice was published for four weeks starting in the ninth month. *Id.* at *4-5.

[9] In her testimony, Foster discussed the actions Stinnet took to execute service of process that we summarized above.

[10] We note that no portion of the file was admitted into evidence and that on appeal Hull contends that the trial court erred by allowing in Foster's testimony because she had no personal knowledge of the efforts made in furtherance of service on Hull. *See* Tex. R. Evid. 602 (explaining that witness may not testify unless evidence is introduced showing that witness has personal knowledge of subject). For the sake of argument, we will assume that the trial court did not err in admitting Foster's testimony.

12

of their calls, that Hull kept telling the firm to send the papers to Morgan,[11] that several attempts were made to contact Morgan, and that Morgan said he could not contact Hull. *See Richard*, 2009 Tex. App. LEXIS 6973, at \*6-7 (explaining that general statements regarding service attempts do not establish due diligence). In addition, Foster explained that Parham "had to" have talked with Stinnet about serving Hull because Parham was aware of the unsuccessful efforts Stinnet had made. Finally, she stated that the firm's in-house investigator unsuccessfully tried to track down Hull by looking for evidence of a paper trail and that the firm attempted to determine Hull's address based on his cell-phone number.[12]

However, Foster did not provide any dates or further details for any of these actions. *See id.* Importantly, Foster provided no testimony from which the jury reasonably could have concluded that any of these actions occurred during the gap described previously, as opposed to outside of it. *See City of Keller*, 168 S.W.3d at 813 (addressing equal inferences). For this reason and in light of the burden on Vidaurri to explain all gaps and demonstrate his diligent efforts, her general testimony that certain actions occurred at some time is not evidence that they occurred within the allegedly improper gap. Accordingly, the testimony does not explain the lapse in service and cannot establish whether Vidaurri was acting with the requisite level of diligence. By not

---

[11]  In her testimony, Foster explained that Hull had instructed them to send the service documents to Morgan, but later Foster stated that Stinnet was the one who told Parham to serve Hull through Morgan.

[12]  Foster also testified that Parham had made "at least two" phone calls to Morgan. Regarding those communications, Foster later stated that Parham had attempted to contact Morgan "by the process server."

13

providing evidence of the dates of efforts toward service, Foster's testimony failed to prove Vidaurri's diligence.

Moreover, Foster later clarified some of her more general testimony. For example, although Foster originally stated that several attorneys and members of the firm were attempting to execute service, she later admitted that the only attorney that she actually remembered making efforts pertaining to serving Hull was Parham. Similarly, although Foster intimated that Parham was communicating with Stinnet, Foster admitted that she could not remember any specific communication between Parham and Stinnet and that Parham never informed her regarding any conversation that she had with Stinnet.[13]

Although in a legal sufficiency review, courts may not substitute their opinion on credibility "for those of the jurors," proper review "prevents jurors from substituting their opinions for undisputed truth." *Id.* at 816-17. Foster's later testimony negated her prior general testimony, and jurors could not disregard the admission that she only recalled Parham engaging in service efforts. *See id.* at 815 (explaining that when conducting legal sufficiency review, courts may not ignore admissions that jury could not).

We also note that Foster gave no information regarding the amount of time that the investigator spent trying to track down Hull or regarding the amount of effort exerted in attempting to ascertain Hull's address by using his cell-phone number. *Cf. Ashley*, 293 S.W.3d at 180-81 at *12

---

[13] As described earlier, Stinnet testified that although she left several messages for Parham, she had no communication with Parham after March 10 and that she left her last message for Parham on May 1. In her testimony, Foster testified that she remembered seeing messages from Stinnet.

14

(considering amount of time spent attempting to execute service when determining whether plaintiff was diligent).[14]

In addition to referring to Foster's testimony, Vidaurri also refers to the testimony of Hull as an explanation for the lapse in service. In his testimony, Hull admitted that he was in jail around the time that this case was filed, that he moved to Dallas after being released, that he lived at various addresses while in Dallas,[15] and that he had several jobs while in Dallas. In light of that testimony, Vidaurri urges that Hull's life at the time was nomadic in nature and that we should consider this when determining whether Vidaurri was diligent in his efforts to serve Hull.

It is true that courts have considered evidence that a defendant has repeatedly changed residences when determining whether service of process was diligently executed. For example, in *Proulx*, the supreme court considered evidence that a defendant was actively avoiding service by staying with various relatives. 235 S.W.3d at 217. However, the evidence was considered as part of the explanation for why the plaintiff's 30 attempts to execute service of process at five residences were unsuccessful. *Id.* at 215, 217.

In this case, no evidence was presented that any service attempt was made during the four-month gap at issue. Due to the absence of evidence demonstrating efforts furthering service during this gap, Hull's testimony cannot serve as an explanation for why service was not

---

[14] In her dissent, Justice Patterson states that "the record is clear that the law firm's in-house investigator was conducting auto track searches" during the four-month gap. However, nothing in the record indicates when those efforts were made or how much effort was exerted. Accordingly, the jury could not have reasonably inferred that the in-house investigator was attempting to locate Hull during either gap previously discussed.

[15] In her testimony, Foster stated that Hull "had like five addresses at the time" and that "[h]e was a very difficult puppy to serve."

15

accomplished.  Moreover, we note that Stinnet testified that the delay in service was not due to an inability to ascertain an address for Hull.

In light of the burden on Vidaurri to justify the delay in service and to demonstrate that he acted with due diligence in attempting to serve Hull, we must conclude that the trial court erred by determining that Vidaurri acted with the requisite level of diligence in attempting to serve Hull because insufficient evidence was presented to explain the gap in service attempts. Accordingly, we sustain Hull's issue on appeal.

**CONCLUSION**

Because the evidence regarding diligence was legally insufficient, we conclude that Hull was entitled to a directed verdict in his favor.  Therefore, we reverse the judgment of the trial court and render judgment that Vidaurri take nothing from Hull.

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton
  Dissenting Opinion by Justice Patterson;

Reversed and Rendered

Filed:  January 22, 2010