**Opinion issued October 27, 2022**



In The

# Court of Appeals

### For The

# First District of Texas

—————————————

## NO. 01-21-00271-CV

———————————

## BILLY ANDERSON, Appellant

## V.

## OREA HARRIS AND SHONIA HARRIS, Appellees

—————————————————————————————

### On Appeal from the 149th District Court
### Brazoria County, Texas
### Trial Court Case No. 104735-CV

—————————————————————————————

### MEMORANDUM OPINION

In this premises-liability case, appellant Billy Anderson sued Orea and Shonia Harris for injuries he sustained when he fell off the roof of the house the Harrises were constructing. The trial court granted the Harrises' no-evidence summary-

judgment motion, implicitly denying Anderson's request for additional time to conduct discovery. We affirm.

## BACKGROUND

The Harrises hired Patrick Knapp as a general contractor to build a house on a property located across the street from the house where they lived. Knapp, in turn, hired Anderson to help construct the roof of the house. One day, while on the roof, Anderson slipped on a piece of wet, unsecured sheet metal and fell about 30 feet to the ground, suffering serious injuries.

Anderson sued the Harrises as owners of the premises on which he fell. The Harrises did not answer until May of 2020, about eight months after Anderson filed suit. By that time, the Covid-19 pandemic had interrupted many business operations in the state. Still, the parties conducted written discovery.

About ten months after they answered, the Harrises filed a no-evidence summary-judgment motion in March of 2021 and set it for hearing two months later, in May. They claimed there was no evidence of two elements of Anderson's premises-liability claim against them. Anderson noticed the deposition of Mr. Harris a week before the date the deposition was supposed to take place. The Harrises quashed the deposition, citing inadequate advance notice. The trial court then granted the Harrises' no-evidence summary-judgment motion, and Anderson now appeals.

3

**DISCUSSION**

Anderson contends the trial court erred in granting the Harrises' no-evidence motion for summary judgment because there had not been adequate time for discovery when the trial court granted the motion and because he provided sufficient evidence to defeat the summary-judgment motion. We disagree on both counts.

**A.     Adequate time for discovery**

In his first point of error, Anderson argues that because of the Covid-19 pandemic, there was not adequate time for discovery before the trial court granted summary judgment.

### *1.     Standard of review and applicable law*

A party may move for a no-evidence summary judgment "[a]fter adequate time for discovery." TEX. R. CIV. P. 166a(i). Usually, the discovery period set by a pretrial order is an adequate time for discovery. TEX. R. CIV. P. 166a(i) cmt. ("A discovery period set by pretrial order should be adequate opportunity for discovery . . . ."); *McInnis v. Mallia*, 261 S.W.3d 197, 200 (Tex. App.—Houston [14th Dist.] 2008, no pet.). But we may consider additional factors in determining whether the trial court permitted an adequate time for discovery, including: (1) the nature of the case; (2) the nature of the evidence necessary to controvert the no-evidence motion; (3) the length of time the case was active; (4) the amount of time the no-evidence motion was on file; (5) whether the movant had requested stricter deadlines for

4

discovery; (6) the amount of discovery that already had taken place; and (7) whether the discovery deadlines in place were specific or vague. *McInnis*, 261 S.W.3d at 201.

A party seeking more time to conduct discovery to oppose a summary judgment "must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *see also* TEX. R. CIV. P. 166a(g), 251, 252; *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The affidavit must provide more than conclusory allegations to show why the additional time is necessary. *Carter*, 93 S.W.3d at 310.

We review a trial court's determination that there has been adequate time for discovery for abuse of discretion. *McInnis*, 261 S.W.3d at 201.

### 2. *Analysis*

Anderson contends the Covid-19 pandemic delayed discovery. After the Harrises moved for summary judgment, Anderson responded by arguing he needed more time for discovery because the "COVID [s]hutdown has profoundly affected the practice of law." Anderson claimed he still needed the Harrises' depositions and their financial records. His attorney filed an affidavit in support stating, "Most of the discovery has been delayed due to the late responses by Defendant, and the COVID [s]hutdown." She offered no further explanation.

Anderson did not include the trial court's pretrial scheduling order in the record. *See* TEX. R. CIV. P. 166a(i) cmt. So, we begin our analysis by considering the additional factors to determine whether there was adequate time for discovery. *See McInnis*, 261 S.W.3d at 201. Anderson has not addressed these factors other than identifying the discovery sought—the Harrises' depositions and financial records—and the length of the time the case had been active—almost a year after the Harrises answered.

Anderson claims the Covid-19 pandemic delayed discovery, but he has not given any explanation as to how the pandemic affected discovery in this case. He acknowledges that the parties conducted written discovery in the ten months the case was pending after the Harrises answered. He also acknowledges that the Harrises quashed his deposition notice because the notice was not given within a reasonable amount of time before the deposition, not because the pandemic prevented him from taking depositions. He has not explained how the pandemic prevented him from conducting written discovery or taking those depositions by video conference. *See Owens v. City of Tyler*, No. 12-21-00009-CV, 2021 WL 4617790, at *9 (Tex. App.—Tyler Oct. 6, 2021, no pet.) (mem. op.).[1] Thus, Anderson's claim that the Covid-19

---

[1] The appellate court in *Owens* similarly did not find reliance on the Covid-19 pandemic, without further explanation, to be a valid reason for not conducting discovery. The court noted:

pandemic delayed discovery in this case is a conclusory allegation that does not support a continuance. *See Carter*, 93 S.W.3d at 310.

The trial court did not abuse its discretion in determining the parties had adequate time for discovery. We overrule Anderson's first point of error.

## B. Additional time for discovery

Anderson's second point of error is a restatement of the first: he claims the trial court should have denied the summary-judgment motion to permit additional time for necessary discovery. Because we have already concluded the trial court did not abuse its discretion in determining there had been adequate time for discovery and overruled his first point of error, we likewise overrule this point of error.

## C. Premises liability

Anderson next contends the trial court erred in granting the Harrises' no-evidence summary-judgment motion because he produced enough evidence to raise a fact issue on his premises-liability claim.

---

The [appellants] claim that the Texas Supreme Court's emergency orders relating to the Covid-19 pandemic prevented discovery. However, those orders did not prevent the parties from serving written discovery requests . . . or conducting depositions via video conference software such as Zoom. The [appellants] essentially gave no explanation for the lack of discovery.

*Owens*, 2021 WL 4617790, at *9.

7

## 1. *Standard of review*

After adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence to support one or more essential elements of the nonmovant's claim. TEX. R. CIV. P. 166a(i); *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). The nonmovant must respond by producing "at least a scintilla" of evidence raising a genuine issue of material fact as to each challenged element. TEX. R. CIV. P. 166a(i); *Cypress Creek EMS*, 548 S.W.3d at 684. If the nonmovant does not produce any evidence or produces "[l]ess than a scintilla of evidence," the trial court must grant the summary-judgment motion. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). Conclusory statements—those that do not supply the underlying facts to support a given representation—do not raise a genuine issue of material fact to preclude summary judgment. *Fortitude Energy, LLC v. Sooner Pipe, LLC*, 564 S.W.3d 167, 183 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

We review summary judgments de novo. *Cypress Creek EMS*, 548 S.W.3d at 683. In reviewing a no-evidence summary judgment, we consider the evidence "in the light most favorable to the party against whom the summary judgment was

8

rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not." *Gonzalez v. Ramirez*, 463 S.W.3d 499, 504 (Tex. 2015) (per curiam) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

### 2.    *Applicable law*

In a premises-liability case, the duty a premises owner owes to the plaintiff depends on the plaintiff's status at the time of the incident. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). An employee of an independent contractor working on the premises, as Anderson was here, is an invitee on the premises. *See Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 224–25 (Tex. 1999) (per curiam). A premises owner generally owes an invitee a duty to keep the premises reasonably safe from dangerous conditions. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203, 215 (Tex. 2015). When the invitee is an independent contractor's employee, there are two types of dangerous conditions, or premises defects, that may give rise to liability. *Coastal Marine*, 988 S.W.2d at 225.

The first type of dangerous condition is a defect that exists on the premises when the employee or independent contractor enters. *Id.* For this type of dangerous condition, the premises owner "has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist." *Id.* This type of

9

dangerous condition includes only "concealed hazards" that already exist when the independent contractor enters the premises. *Id.* For example, an open shaft, without adequate warnings, falls into this category of dangerous conditions. *Id.* To prevail on this type of dangerous-condition claim, a plaintiff must establish the traditional premises-liability elements: (1) the premises owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the premises owner failed to take reasonable care to reduce or eliminate the risk; and (4) the premises owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee. *See Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) (per curiam).

The second type of dangerous condition is one that "arises as a result of the independent contractor's work activity." *Id.* For this type of dangerous condition, the premises owner generally "owes no duty to the independent contractor's employees because an owner generally has no duty to ensure that an independent contractor performs its work in a safe manner." *Id.* However, an exception to this general rule exists when the premises owner "retains the right of supervisory control over work on the premises." *Id.* at 225–26. In these cases, the premises owner may still be liable, but the "standard is narrow," and the "right to control must be more than a general right to order work to stop and start, or to inspect progress." *Id.* at 226. "The supervisory control must relate to the activity that actually caused the

injury, and grant the [premises] owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner." *Id.* A party can prove a premises owner's control in two ways: (1) with evidence of a contract explicitly assigning the premises owner the right to control; or (2) in the absence of a contract, with evidence that the premises owner "actually exercised control over the manner in which the independent contractor's work was performed." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *see also Coastal Marine*, 988 S.W.2d at 226. To prevail on this type of dangerous-condition claim, a plaintiff must establish both the premises owner's right to control and the traditional premises-liability elements. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997); *Henkel*, 441 S.W.3d at 251–52 (stating traditional premises-liability elements).

### 3.    *Analysis*

In their no-evidence motion for summary judgment, the Harrises asserted there was no evidence of two elements of Anderson's premises-liability claim: (1) the Harrises' control over the independent contractor's work; and (2) the Harrises' actual or constructive knowledge of the dangerous condition that caused Anderson's injury. We conclude that in response to the no-evidence summary-judgment motion, Anderson did not produce enough evidence to raise a fact issue as to these two elements.

11

The parties disagree about the type of dangerous condition involved in this case. Anderson refers to a dangerous condition—a piece of unsecured sheet metal—that he claims existed on the premises before he or the independent contractor entered the property. *See Coastal Marine*, 988 S.W.2d at 225 (describing type of dangerous condition existing on premises when invitee entered). The Harrises argue that the dangerous condition arose from the independent contractor's work activity on the premises because they hired the independent contractor to build the house, so the unsecured sheet metal on the roof of the house must have resulted from the independent contractor's actions. *See id.* (describing type of dangerous condition arising as result of independent contractor's work activity). But we do not need to decide the type of dangerous condition at issue here because both types require proof of the traditional premises-liability elements, including the premises owner's actual or constructive knowledge of the dangerous condition. *See Olivo*, 952 S.W.2d at 529; *Henkel*, 441 S.W.3d at 251 (one element of premises-liability claim is premises owner's actual or constructive knowledge of condition causing plaintiff's injury).

We conclude that Anderson did not produce enough evidence to raise a fact issue as to the Harrises' actual or constructive knowledge of the dangerous condition, so he cannot recover on a claim for either type of dangerous condition. Further, even if this case involved the second type of dangerous condition—one arising from the independent contractor's work activity—we conclude Anderson did

12

not produce enough evidence to raise a fact issue as to the Harrises' control over the independent contractor's work activity.

### a. *Knowledge of dangerous condition*

In their no-evidence summary-judgment motion, the Harrises claimed they did not have actual or constructive knowledge of the wet, unsecured sheet metal on the roof of the house because they did not live on the property at the time, the house was still under construction, and they were not on the property on the day Anderson fell.

In response, Anderson argued that the Harrises lived across the street from the house under construction, so they could see the ongoing work. Further, he argued the Harrises were controlling the work being done on the house—an issue discussed more fully below. And, according to Anderson, Mrs. Harris was on the property when he fell off the roof because she was the first to reach him after he fell. In support of these contentions, Anderson offered his own affidavit stating:

> I have been an industrial metal worker for most of my work history. I have also been instrumental in the installation of metal roofs on residential construction.
> . . . .
> My job at the Harris house was to help finish the metal roof. The tarpaper and runners were already installed. Two sheets of metal were on the roof. One was secured to the structure. Unknown to me, the second sheet was not secured. No one told me the metal was unsecured. It was not observable that the metal was unsecured.

> Mr. and Mrs. Harris lived across the street from the house I was working on. By observing the ongoing roof work, Mrs. Harris would have known that the second sheet of metal was unsecured.

The affidavit itself is contradictory and does not provide facts to support the conclusion that Mrs. Harris knew of the unsecured sheet metal. Anderson acknowledges that to him, an experienced roofer standing on the roof, it was "not observable that the metal was unsecured," yet he claims Mrs. Harris, a person with no construction knowledge, would have been aware of that fact by observing the roofing work from across the street. Anderson offered no other evidence of the Harrises' knowledge of the unsecured sheet metal.

On appeal, Anderson argues that the Harrises had constructive knowledge of the unsecured sheet metal because the independent contractor, Knapp, had knowledge of the dangerous condition, and his knowledge can be imputed to the Harrises because Knapp was their agent. Anderson relies on *Los Compadres Pescadores, L.L.C. v. Valdez* to argue that an agent's knowledge of a dangerous condition can be imputed to the premises owner. *See* 622 S.W.3d 771, 787 (Tex. 2021). In that case, the premises owner, Los Compadres Pescadores, hired Luis Torres instead of a general contractor to manage and supervise a construction project. *Id.* at 777. The Court first determined that Torres was Los Compadres's employee or agent because the company retained the right to control the manner in which he performed his work. *Id.* at 780–81. The Court then concluded that Torres

14

had actual knowledge of the dangerous condition on the premises—live power lines—because an independent contractor working on the project testified that he had multiple conversations with Torres about the live power lines and asked Torres to de-energize the lines. *Id.* at 787. Torres's knowledge was imputed to Los Compadres because Torres was Los Compadres's agent. *Id.* Los Compadres was thus liable for the premises-defect claim asserted by the employees who were electrocuted by the live power lines. *See id.* at 790–91.

Even assuming that Knapp was an agent of the Harrises and that his knowledge could be imputed to the Harrises as in *Los Compadres*, Anderson did not provide any evidence that Knapp had actual or constructive knowledge of the unsecured sheet metal on the roof. In the trial court, Anderson alleged without any evidentiary support that Knapp employed the worker who failed to secure the sheet metal. At best, this allegation creates a "mere surmise or suspicion" that Knapp may have known about the condition of the roof. *See King Ranch*, 118 S.W.3d at 751 (quoting *Kindred*, 650 S.W.2d at 63). "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident," and constructive knowledge "can be established by facts or inferences that a dangerous condition could develop over time." *Los Compadres Pescadores*, 622 S.W.3d at 786. Anderson did not provide any evidence that Knapp knew the sheet metal was unsecured or that he had reason to infer the sheet metal would become unsecure over

15

time. Anderson has failed to provide at least a scintilla of evidence that Knapp knew about the unsecured sheet metal. *See Cypress Creek EMS*, 548 S.W.3d at 684. While an agent's knowledge of a dangerous condition can be imputed to a premises owner, *Los Compadres Pescadores*, 622 S.W.3d at 787, if the agent does not know about the dangerous condition, knowledge cannot be imputed to the premises owner.

Anderson failed to provide any evidence that either the Harrises or Knapp, if he was their agent, knew about the unsecured sheet metal. Thus, he failed to raise a genuine issue of material fact as to the knowledge element of his premises-liability claim. *See* Tex. R. Civ. P. 166a(i); *Cypress Creek EMS*, 548 S.W.3d at 684. The trial court properly granted the Harrises' no-evidence summary-judgment motion.

*b.    Control over work activity*

Even if this case involved the type of dangerous condition that arises from an independent contractor's work activity, the Harrises would owe no duty to Anderson unless he can demonstrate they "retain[ed] the right of supervisory control over work on the premises." *Coastal Marine*, 988 S.W.2d at 225–26. The parties agree there was no contract explicitly assigning the Harrises the right to control the work activity, so to demonstrate the Harrises' control, Anderson would need to show they actually controlled the work activity. *See Bright*, 89 S.W.3d at 606; *Coastal Marine*, 988 S.W.2d at 226. Anderson did not produce evidence to raise a fact issue as to the Harrises' control over the independent contractor's work activity.

16

The Harrises asserted in their summary-judgment motion there was no evidence they ever retained or exercised control over the means, methods, or details of the construction project.

In response, Anderson argued the Harrises controlled the work by purchasing materials, paying the workers, and supervising the work activity.

In support of theses contentions, Anderson submitted the affidavit of Jamie Webb, who is his wife's brother and a friend of the Harrises' daughter. Webb's affidavit stated that Mr. Harris said he was buying all the materials for the house, and, because of that, he was scheduling what could be worked on. Webb's affidavit also stated the Harrises were "very dissatisfied" with Knapp and said they needed to find another contractor because Knapp was "not doing a good job." Webb's affidavit closed with: "I concluded that [Mr. Harris] was controlling the work by choosing when to purchase materials, and supervising the work because he was critical of the quality of the work being performed."

This affidavit is conclusory. The facts stated within do not demonstrate the Harrises' control over the manner in which the construction work was done, so there is no basis for Webb's stated conclusion. *See Fortitude Energy*, 564 S.W.3d at 183. The facts stated in the affidavit at most demonstrate the Harrises were responsible for the cost of constructing their house. Anderson would have us infer that paying for materials proves the Harrises controlled the order in which the work was

performed, but this evidence is "so weak as to do no more than create a mere surmise or suspicion" of that fact. *See King Ranch*, 118 S.W.3d at 751 (quoting *Kindred*, 650 S.W.2d at 63). Anderson provided no evidence that the Harrises actually directed the order in which the work should be performed. Taking as true Webb's statement that the Harrises were dissatisfied with Knapp's work, that fact equally supports the conclusion they were not controlling his work—otherwise, they would have been able to correct his work performance. And even though Webb asserts that the Harrises were supervising the work activity, the "right to control must be more than a general right . . . to inspect progress." *Coastal Marine*, 988 S.W.2d at 226. The information stated in Webb's affidavit does not demonstrate that the Harrises were controlling the manner in which Knapp performed his work. *See Bright*, 89 S.W.3d at 606; *Coastal Marine*, 988 S.W.2d at 226.

Anderson's affidavit similarly provides no more than a "mere surmise or suspicion" that the Harrises were controlling the work activity. *See King Ranch*, 118 S.W.3d at 751 (quoting *Kindred*, 650 S.W.2d at 63). He stated, "I would be paid weekly, because the Harrises were paying Knapp weekly." On appeal he argues that means he understood the Harrises, not Knapp, were paying him for his work. Taking as true that the Harrises paid Anderson, this fact still does not demonstrate the Harrises controlled the work activity on the construction site.

Anderson provided no evidence the Harrises had actual control over the independent contractor's work activity. Therefore, even if his claim involved a work-activity dangerous condition, he has not raised a fact issue to defeat summary judgment. *See* TEX. R. CIV. P. 166a(i); *King Ranch*, 118 S.W.3d at 751.

*c.    Summary*

In response to the Harrises' no-evidence summary-judgment motion, Anderson produced less than a scintilla of evidence raising a genuine issue of material fact as to each challenged element of his premises-liability claim: knowledge of the dangerous condition and control over the work activity. Therefore, the trial court did not err in granting the Harrises' motion for summary judgment. Anderson's third point of error is overruled.

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Countiss, and Farris.